Johnson, J.
The joint board referred to was formed in pursuance of Section 3148, General Code, which reads as follows:
“In accordance with the purposes, provisions and regulations of the foregoing sections, except as hereinafter provided, the commissioners of any two or more counties, not to exceed five, may form themselves into a joint board for the purpose of establishing and maintaining a district hospital for the care and treatment of persons suffering from tuberculosis, and may provide the necessary funds for the purchase of a site and the erection of the necessary buildings thereon, in the manner and for the purposes hereinbefore provided.”
The succeeding sections confer the same power of appropriation on the joint board, as boards of trustees of benevolent institutions have, as well as power to receive donations and bequests of money or land.
*161 They provide for the appointment of a board of trustees by the joint board, one member from each county, and that the joint board may remove any trustee for good and sufficient cause, after hearing; that the board of trustees shall prepare plans and specifications, and proceed to erect and furnish the necessary buildings for the district hospital referred to, and for the appointment of superintendent, nurses, and other employes by that board; that the first cost of the hospital and the cost of betterments and additions thereto shall be paid by the counties comprising the district, in proportion to the taxable property of each county, as shown by their respective duplicates. And, further, that the boards of commissioners of the counties jointly maintaining the district hospital for tuberculosis shall make annual assessments of taxes sufficient to support and defray all necessary expenses.
In support of the demurrer to the petition, plaintiffs in error maintain, that Section 3148 grants no power to the joint board, to appropriate funds, nor to determine the amount necessary for the equipment of the hospital, but that, that power is lodged solely with the commissioners of the various counties, and that, although as alleged in the petition, the joint board had been duly formed, and had purchased and paid for the site and had appropriated $90,000.00 for the building, and although each of the counties had paid their proportion of the $10,000.00 to purchase the site, and of the $90,000.00 for the building, yet there was *162 no power in the joint board to go forward with the enterprise!
The language is, “the commissioners of any two or more counties, not to exceed five, may form themselves into a joint board * * * and may provide the necessary funds for the purchase of a site,” etc. Substantially, it is contended that from the above language, the matters referred to at all times rest in the discretion, and depend on the will, of the commissioners of the several counties, each county having the right to determine for itself whether it should provide its share of the money.
This law was passed in response to an intelligent public sentiment which was formed in the light of the gratifying advances in medical science, in recent years. The legislature, in the enactment of the law, exercised the police power which belongs to it, as the depositary of the sovereignty of the state, and in the performance of its duty to provide for the health, safety and best interest of the people. It was an effort on the part of the legislature, to provide a plan for arresting the advance, and if possible, for the extermination of a dreadful disease.
It may be conceded, that the law is not as full in some of its details as might be desired, to give facility to its administration, but the court will not let its purpose fail, of its beneficent result, for this reason alone. In the absence of plain terms to require a different course such a construction will be put on the statute as will prevent the failure of the manifest purpose of the legislature. The *163 court will not by construction paralyze the arm of the joint board by denying to it the power necessarily incident to the actual and definite grant of authority.
The “foregoing” sections referred to in Section 3148 are sections which provide for the establishment of a similar hospital by the county commissioners of a county, and this act will be considered in connection with the provisions of that act where it is necessary.
What is it that has been done when the commissioners have met and acted in accordance with the statute?
In the first place, it is plain that Section 3148 provides for the creation of a complete legal entity, a political subdivision, for the specific purpose of “establishing and maintaining” a district hospital, for the care and treatment of persons suffering from tuberculosis.
The enactment is, the commissioners of two or more counties * * * may form the joint board and may provide the necessary funds.
It is the board, as a board, which shall determine what buildings are necessary for its purpose, and shall provide the funds for the “purchase of the site” and erection of the “necessary buildings” thereon.
The subsequent sections referred to furnish the method of raising the money, and impose upon the commissioners of the different counties the duty of levying the tax for the purpose of paying their several shares into the general fund, and having done this, it is the duty of the joint board to *164 appoint the trustees, as the instrumentality to carry on the detail work of erecting and operating the hospital.
The position of the plaintiffs in error necessarily is, in its logical result, that the commissioners of any county may' join with the commissioners of other counties, not exceeding four more, and proceed in full accordance with the terms of this statute to the formation of a joint board; may participate in all of the work necessary to carry out the objects of the statute, including payments into the fund necessary to the purchase of the property and erection of . the buildings; may thereafter, at any time, retire from the enterprise in response to any caprice, or change of mind, and really, that this statute does not furnish a substantial, operative plan at all.
It would be a vain thing for the commissioners of any county to participate in an)^ of the undertakings described in this act if this view of the law is correct. We think it clear that that conclusion is not justified.
When a board of commissioners has proceeded with the commissioners of other counties to the formation of a joint board referred to, and when that board has been formed and proceeded to the carrying out of the duties imposed on it by the statute, each óf'the counties whose commissioners have joined in the forming of the board, have fixed and definite obligations, with reference to the hospital, which cannot bé terminated at the mere will of any such county. The will of the majority must control, as long as it violates no *165 provisions of the law. In re State Treasurer’s Settlement, 51 Neb., 116; Whiteside v. The People, 26 Wend., 634. The words “may provide the' necessary funds,” etc., are part of the same sentence which describes what the commissioners of two or more counties can do, as such board.
It is also contended that certain portions of the law are unconstitutional.
It is said that this statute places in the hands of the board of trustees appointed by the joint board the right of fixing and levying taxes; that this board (though not appointed by the commissioners) but by the joint board, supersedes the commissioners themselves in the right to fix and assess taxes, in violation of Section 7, Article X, of the Constitution, which provides, viz: “The commissioners of counties, trustees of townships and siinilar boards shall have such power of local taxation for police purposes as may be prescribed by law.”
It is urged that the provisions of Section 3151 directing the board of trustees to appoint a superintendent, nurses, etc., and fix their salaries, violate that section of the Constitution. And, further, that the plan provided contemplates the levying of taxes by a method that is not uniform, in conflict with Section 2 of Article XII of the Constitution.
It may be said that that question is not reached in the case now before us, because, in the facts set out in the petition, the trustees have had nothing to do with the determination of the amount of, or the manner of raising the money to *166 be used in purchasing the site, and building the hospital. And if it were conceded that the provisions as to the powers and duties of the board of trustees are unconstitutional that would not render void the whole act, because, under Section 3148, the joint board is given the power to “establish and maintain” the hospital. So if the provisions as to the board of trustees were to be held invalid, the joint board could proceed under that section with the “establishing and maintaining” of the hospital without the intervention of the trustees at all. Therefore, under familiar rules, the rest of the act might stand. And, further, if it be conceded that a new tax district was created by the act, the legislature was vested with power while creating this new political entity, to create the new taxing district thereby.
What territory shall constitute a district for the purpose of taxation, may be provided for by the general assembly in the exercise of its legislative power.
It was decided in Bowles v. State, 37 Ohio St., 35, that the legislature, in the exercise of the general power of taxation, may create a special taxing district without regard to municipal or political subdivisions of the state, and may levy taxes on all property within such district by a uniform rule, according to its true value in money, for the purpose of defraying the expense of constructing and maintaining public roads therein.
We have seen that the first cost of the hospital, and the cost of all betterments and additions thereto, shall be paid by the counties comprising *167 the district in proportion to the taxable property of each county, as shown by their respective duplicates; and that the levy and assessment shall be made by the commissioners of the several counties. We are not able to see how any more complete uniformity could be suggested. But we cannot assent to the proposition that the board of trustees provided for in the act is a taxing board with the right of fixing and levying taxes. It is created purely as an administrative agency to build the buildings and conduct and operate the hospital.
Under our system the executive department of the government necessarily has many boards to assist in the administration of governmental affairs. And, as the aims and efforts of the state increase and extend into new fields for the benefit of the people, it will be necessary to constantly extend these provisions.
The joint board continuously exercises a supervising power over the board of trustees appointed by it, and may remove any trustee for good and sufficient cause. All vacancies in the board are filled by the joint board, and the board of trustees is required to file with the joint board, at stated-periods, full reports of all its proceedings, including statements of receipts and expenditures. It is expressly provided that the levying of the taxes sufficient to support and defray the necessary expenses shall be made by the commissioners of the several counties constituting the joint district, in proportion to the use each makes of the common property, as provided in Section 3152. True, they *168 are required to act in all these matters, but they are required to act in any other necessary matter concerning which it is their duty to levy taxes.
In Commissioners v. Church and Caldwell v. Commissioners, 62 Ohio St., 318, the statute relating to actions to recover damages from a county for injuries received at the hands of a mob was involved. It provided that where recovery was had an order should be made directing the commissioners to provide for the amount in the next succeeding tax levy. The commissioners of the county were still left to be the taxing power, but they were required to provide for the payment of the judgment. The court say: “It authorizes an order to be made on the commissioners of the county to include the same in the next succeeding tax levy. This, as we have seen, the legislature has power to enact, under the general police power, the general taxing power and Section 7, Article X of the Constitution.”
So, in this case, this law does not clothe the joint board or its administrative agency, the board of trustees, with authority to levy taxes, but it does clothe the joint board with authority to determine all questions relating to the purchase of the site, and the erection of the necessary buildings thereon, in accordance with the provisions of the statute, and leaves to the different counties the power and the duty of supplying their respective portions of the means necessary to accomplish the purpose by taxation.
The act in question, in all of its essential features — the formation of the joint board, the *169 appointment of trustees and the provisions as to payment of first cost of the home, as well as the accounting for and payment of current expenses and repairs — is similar to and was probably modeled after the act for establishing and maintaining joint district children’s homes, passed March 22, 1876 (73 O. L, 64).
Whatever weight may properly be given to long acquiescence in the validity of that act, may be invoked as to the act here in question, as well as the presumption that the plan has proven feasible and satisfactory.
We conclude that this law is not in conflict with the Constitution.
It is further contended that the circuit court erred in its finding of fact in several respects, to-wit: that Harry C. McCammon, plaintiff below, is a taxpayer, resident of said district; that Stark county, at the time of the commencement of this action, had in its treasury for the building fund of said county, and not appropriated to any other use, a sum in excess of $50,000.00, arising from taxation on the business of the traffic in spirituous, vinous, malt and other intoxicating liquors; and that each of the other counties comprising said joint district, except Stark county, has complied with said call for additional funds and has provided its proportionate amount thereof.
The circuit court made its finding after hearing the evidence, and we are not able to say that the record discloses no evidence in support of any one of them.
*170 As to the plaintiff, it appears that he was a member of the board of commissioners of Columbiana county, and the presumption is as a matter of law, that he was a citizen of that county, and of course, as such is a citizen of the joint district. This was all that was necessary to be shown in order to maintain this proceeding, which is to enforce a public duty.
In State, ex rel., v. Henderson, 38 Ohio St., 649, the court say: “where the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the people are regarded as the real party, and the relator need not show that he has any legal or special interest in the result, it being sufficient to show that he is a citizen, and, as such, interested in the execution of the laws.” To the same effect are, State, ex rel. Trauger, v. Nash, Governor, 66 Ohio St., 612, and State, ex rel., v. Tanzey, 49 Ohio St., 656.
As to the question whether Stark county had in its treasury the sum of $50,000.00 not appropriated for any other use, which under Section 5669 might be transferred to any other fund, there was testimony in the record in support of this finding, and we cannot say the circuit court was not justified in making it. But this is not an important matter, because even if there was not evidence to support the finding, and even if there was no such fund not appropriated to any other use arising from such source, it would be still the duty of the commissioners of Stark county to provide the proportion of that county by taxation according *171 to law. The statute does not contemplate the possession of surplus money before the formation of the joint district, or require that an inquiry must be made as to whether there is such a surplus before joining in the undertaking. Section 3141 enacts that if any county has not funds available for the purposes referred to, the commissioners shall levy for that purpose. The same remark may be made as to the contention of the plaintiff in error that prior to the organization of the board there was an agreement or understanding between the different .boards constituting the joint board as to the limitation of the amount to be fixed in making the improvement contemplated by such organization.
The circuit court found that there was no such understanding or agreement, but even if there were such an understanding, it would be at best the mere expression of the sense of the members of the board, or of the board itself, at the time. It would be a declaration of policy which the members of the board might feel a desire to fulfill, but such a desire, or such a declaration, however solemnly made, could not be binding on the official body.
In the nature of the case matters which were unforeseen at the inception of the undertaking might arise which would clearly show the wisdom of enlarging the sum to be spent, and which would render it unwise not to increase the amount.
Nor can we assent to the suggestion that injustice might be done to any one county by the action of other counties conspiring together to increase *172 the amount that any county should pay, above the amount it had expected to pay, or of right ought to pay.
The statute provides the uniform rule by which each shall contribute to the general fund, and no advantage can be taken in that respect. If there should be collusion or other fraudulent steps taken by two or more of the counties acting together, any injured board of county commissioners could obtain relief in a court of equity.
Another position taken by the plaintiffs in error is, that there was an adequate remedy at law for plaintiff below.
It may be said that an adequate remedy is one that affords relief with reference to the matter in controversy, and is appropriate to the particular circumstance of the case.
Where the remedy sought is the performance of a public duty, by a public board, and an action at law will not enforce the performance of such duty, it is not an adequate remedy. The duty of a public board to appropriate money or to levy such tax as may be necessary to meet legal obligations, is such a duty as may be enforced by mandamus. High’s Ex. Leg. Remedies (3 ed.), Sec. 17; State v. Staley, 38 Ohio St., 265; State, ex rel., v. Henderson, 38 Ohio St., 649; State, ex rel., v. Board of Education, 27 Ohio St., 96; 26 Cyc., 171 and 172.
In this case the remedy sought is a writ to compel the performance of a public duty. It is a proceeding .to compel the officials named to take the necessary legal steps to provide Stark county’s *173 proportionate share of the funds needed to complete the joint undertaking, and appropriate same to the use of the board of trustees for that purpose. The action at law would not be adequate to furnish this proper relief.
We find no error in the record and the judgment of the circuit court will be affirmed.

Judgment affirmed.

Davis, C. J., Spear, Shauck, Donahue and O’Hara, JJ., concur.